**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| KATHERINE SHAW and ASHLEY KOZAR, | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| INTERNATIONAL ALLIANCE OF | ) |
| THEATRICAL STAGE EMPLOYEES, | ) |
| MOVING PICTURE TECHNICIANS, | ) Case No. 4:25-CV-01245-SPM |
| ARTISTS AND ALLIED CRAFTS OF THE | ) |
| UNITED STATES, ITS TERRITORIES | ) |
| AND CANADA; AND KATE | ) |
| WILKERSON, LAURA CAMPBELL, AND | ) |
| KIMBERLY STONE, D/B/A/ IATSE | ) |
| LOCAL 805, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Motion to Dismiss filed by Defendants International Alliance of Theatrical Stage Employees, Moving Picture Technicians, Artists and Allied Crafts of the United States, Its Territories and Canada ("IATSE" or the "International"), Kate Wilkerson, Laura Campbell and Kimberly Stone (collectively, "Defendants") (Doc. 17). The motion has been fully briefed. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) (ECF No. 29). For the following reasons, the motion to dismiss will be granted.

**I.     BACKGROUND[1]**

Defendant IATSE is an international union that represents workers in the entertainment

---

[1] The following facts are taken from the Complaint. (ECF No. 1).

industry throughout the United States and Canada. Defendants Kate Wilkerson, Laura Campbell, and Kimberly Stone together operate Local 805 (collectively, "Local 805"), the local branch of IATSE representing workers in the entertainment industry in the St. Louis, Missouri region. Local 805 maintains and operates a hiring hall through which it refers members for work with various employers in the entertainment industry (the "Hiring Hall"), in accordance with its Hiring Hall rules. The Hiring Hall rules include four levels of eligibility for dispatch: "A" list members are those in good standing of Local 805 who have completed the probationary period; "B" list members are those in good standing of Local 805 who are still in their probationary period; "C" list members are those in good standing of other IATSE local branches who have registered with the Hiring Hall; and the "D" list consists of "non-cardholding members" who have registered with the Hiring Hall and demonstrated qualification in one or more crafts. Individuals in these four levels pay "dues"—in the same amount regardless of level—to the union through deductions in their pay stubs.[2]  According to the Complaint, the union created these levels of eligibility based on arbitrary factors and the union does not provide copies of "the Collective Bargaining Agreement" to "non-cardholding members."

Plaintiffs Katherine Shaw and Ashley Kozar are "non-cardholding members" seeking full membership status to Local 805. Plaintiffs pay dues, hiring hall fees, and referral fees but have been denied full membership status—and its associated rights and benefits, such as access to union documents and the ability to vote on union matters—in Local 805. Plaintiffs assert that without access to union documents, they cannot determine the terms governing their job assignments, overtime opportunities, grievance procedures, wage scales, and benefits eligibility.

---

[2] The Court adopts the Complaint's practice, where applicable, of referring to Defendants collectively as "the [u]nion" for certain allegations. (*See, e.g.,* ECF No. 1 at ¶¶ 18, 20-22, 29, 32, 36-39). However, as discussed further below, the Court notes that such references are imprecise diminish the clarity of the allegations.

On March 8, 2025, Plaintiffs learned that the union had excluded them from seniority lists for regular work assignments and overtime opportunities. Both Plaintiffs allege that the union has failed to refer them for job assignments through the Hiring Hall, in contravention of Hiring Hall rules. Ms. Shaw has sent emails and other communications to union representatives, including IATSE President Matthew D. Loeb, regarding her membership status and rights. Ms. Kozar sent a demand letter to the union alleging that the union has bypassed her for available work calls for seven years, leading to an estimated $35,000 in lost wages. Plaintiffs also filed an internal complaint against the union on April 21, 2025, but have not received a response from Defendants.

Plaintiffs now bring this action pursuant to Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, for breach of the duty of fair representation against Defendants. They allege that, as the exclusive bargaining representative of employees in the entertainment industry in the St. Louis region, Defendants have breached their duty to Plaintiffs by denying them membership and other rights under the Collective Bargaining Agreement, failing to refer Plaintiffs for job assignments through the Hiring Hall in accordance with established rules and procedures, and performing such actions in an arbitrary, discriminatory, and bad faith manner toward Plaintiffs. Plaintiffs estimate lost opportunities of, per year, approximately 30 regular calls, 20 premium overtime shifts, and six high-paying special events. They ask the Court to, *inter alia*, (1) order Defendants to grant Plaintiffs full membership status in Local 805 with all rights and benefits afforded to full members, (2) order Defendants to include Plaintiffs on the seniority lists for job assignments and overtime opportunities, (3) order Defendants to provide Plaintiffs with access to the Collective Bargaining Agreement, Constitution, and Bylaws (presumably, of Local 805), and (4) award Plaintiffs compensatory damages.

Defendants have moved to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.

Plaintiffs have filed an opposition requesting, in the alternative to denial of Defendants' motion, leave to amend the Complaint.

## II.   LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When ruling on a motion to dismiss, the Court must accept as true all factual allegations in the complaint, but it need not accept the legal conclusions. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "detailed factual allegations" are not required, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court must make "all reasonable inferences in favor of the nonmoving party." *Usenko v. MEMC LLC*, 926 F.3d 468, 472 (8th Cir. 2019).

## III.   DISCUSSION

### 1.   *Liability of IATSE*

Defendants argue that IATSE should be dismissed from this action because it is not Plaintiffs' exclusive bargaining representative, and therefore—absent authorization, participation, or ratification—IATSE is not liable for the actions of Local 805. The Court agrees.

"The duty of fair representation is the duty to act as the exclusive bargaining agent in a fair manner." *Smith v. Nat'l Football League Players Ass'n*, 2014 WL 6776306, at *4 (E.D. Mo. Dec. 2, 2014) (citing *Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 46 (1979)). It is a judicially created doctrine that "requires a union to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to

avoid arbitrary conduct." *Hayden v. Int'l Bhd. of Teamsters*, 2008 WL 413837, at \*4 (E.D. Mo. Feb. 13, 2008) (quoting *Marquez v. Screen Actors Guild, Inc.,* 525 U.S. 33, 44 (1998)) (internal quotation marks omitted). "Exclusive representation is a necessary prerequisite to a statutory duty to represent fairly." *McCormick v. Aircraft Mechanics Fraternal Ass'n*, 340 F.3d 642, 645 (8th Cir.2003) (citation modified). As a result, "international unions are routinely dismissed from duty of fair representation suits when they are neither the recognized collective bargaining representative nor a party to their contract." *Carr v. Loc. Union 1593, Int'l Bhd. of Elec. Workers*, 371 F. Supp. 2d 1097, 1103 (D.N.D. 2005) (citation modified).

Here, Plaintiffs allege that Local 805, and not IATSE, is their exclusive bargaining representative. (ECF No. 1 at ¶ 13). Therefore, "common law principles of agency govern whether an international union is liable for the actions of a local union chapter or its officers." *Austin v. Int'l Bhd. of Elec. Workers*, 2012 WL 685416, at \*3 (E.D. Mo. Mar. 2, 2012) (citing *Carbon Fuel Co. v. United Mine Workers of America*, 444 U.S. 212, 216–217 (1979)). "Proof of an agency relationship requires evidence that the international union instigated, supported, ratified or encouraged the [l]ocal's activities or the [l]ocal acted pursuant to its agreement with the [i]nternational." *Id.* (quoting *Moore v. Local Union 569 of the Int'l Bhd. of Electrical Workers*, 989 F.2d 1534, 1543 (9th Cir.1993)) (internal quotation marks omitted); *see also Miller v. United Bhd. of Carpenters & Joiners of Am.*, 2021 WL 4527453, at \*2 (E.D. Mo. Sept. 30, 2021) ("[c]ommon law agency principles require that the union instigated, supported, ratified or encouraged the local's actions, or that the local acted pursuant to its agreement with the union, before an international can be held liable for the action of a local") (citation modified).

Plaintiffs argue that they have sufficiently alleged that IATSE was "on notice" regarding the alleged issues surrounding Plaintiffs' membership and job referrals, pointing to the Complaint's mention of communications to IATSE President Matthew D. Loeb. However, courts

in the Eighth Circuit have found that such allegations of "non-actionable passive acquiescence by unions" are "insufficient" for agency purposes. *Butcher v. AFSCME Council 5*, 2025 WL 744068, at *5 (D. Minn. Mar. 7, 2025) (citation modified); *see also Thorn v. Amalgamated Transit Union*, 305 F.3d 826, 832 (8th Cir. 2002) (holding, in the context of a Title VII claim, that international unions have no duty to investigate or otherwise remedy employment discrimination at the local level and rejecting argument relying on "non-actionable passive acquiescence"). Courts in this and other circuits have rejected "mere inaction," without more, as a basis for vicarious liability. *Miller*, 2021 WL 4527453 at *4; *see also Austin*, 2012 WL 685416 at *3 ("[R]atification can only occur when the principal, having knowledge of the material facts involved in the transaction, evidences an intention to ratify.") (citation modified).

The Court also rejects Plaintiffs' assertion that, where the Complaint collectively references "Defendants" or "the Union," it sufficiently alleges IATSE's involvement in the relevant transactions of the case.[3] *See, e.g., Dukeman v. Ste. Genevieve Cnty.*, 167 F.4th 500, 504 (8th Cir. 2026) (noting the "insufficiency of [plaintiff's] group pleading" and rejecting plaintiff's "collective allegation[s]" regarding defendants). Beyond lacking the specificity required in a duty of fair representation claim (as discussed above), here the Complaint's group pleading also introduces confusion. For example, the Complaint alleges that Local 805 is the exclusive bargaining representative for workers in the entertainment industry in the St. Louis, Missouri region, but later alleges that "Defendants" (including both IATSE and Local 805) are Plaintiffs' exclusive bargaining representative. (ECF No. 1, §§ 13, 47). The Court agrees with Defendants that this is imprecise pleading that does not "allege sufficient facts that, taken as true, state a claim

---

[3] The Complaint names "Defendants International Alliance of Theatrical Stage Employees, Moving Picture Technicians, Artists and Allied Crafts of the United States, Its Territories and Canada ('IATSE International') and Kimberly Stone, Laura Campbell and Kate Wilkerson d/b/a IATSE Local 805 (collectively, 'Defendants' or 'Union')…" (ECF No. 1).

to relief that is plausible on its face." *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057 (8th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

Plaintiffs do not allege that IATSE "did more than remain passive with respect to the alleged acts," and therefore do not sufficiently state a claim of vicarious liability. *Miller*, 2021 WL 4527453 at *4; *see also Neiger v. Sheet Metal Workers Int'l Ass'n, AFL-CIO*, 470 F. Supp. 622, 630 (W.D. Mo. 1979). Plaintiffs' claims against IATSE will be dismissed.

### 2. *Duty of Fair Representation in the Hiring Hall*

Defendants next argue that Plaintiffs claims for damages and other relief stemming from Defendants' alleged failure to refer job assignments through the hiring hall fail because Plaintiffs have not alleged that Local 805 operated an exclusive hiring hall. The Court agrees.

"[A] labor organization has a statutory duty of fair representation ... to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6,* 493 U.S. 67, 73 (1989) (citation modified). "[E]xclusive representation is a necessary prerequisite to a statutory duty to represent fairly." *Kuhn v. Nat'l Ass'n of Letter Carriers, Branch 5,* 528 F.2d 767, 770 (8th Cir. 1976); *Teamsters Local 460 (Superior Asphalt)*, 300 N.L.R.B. 441, 441 (1990) ("A union's duty of fair representation derives from its status as the exclusive bargaining representative of employees in a specified unit."). In the context of job referral systems like hiring halls, "the word 'exclusive'…is a term of art denoting the degree to which hiring is reserved to the union hiring hall." *Breininger,* 493 U.S. at 71 n.1 (internal citation omitted). Examples include "if the union retains sole authority to supply workers to the employer up to a designated percentage of the work force or for some specified period of time, such as 24 or 48 hours, before the employer can hire on his own." *Id.*

A union need not reserve *all* hiring authority for its hiring hall to be considered "exclusive."

*Int'l All. of Theatrical Stage Emps., Moving Picture Technicians, Artists & Allied Crafts of the United States, its Territories & Canada, Loc. Union No. 151 ("IATSE, Local Union No. 151") v. N.L.R.B.*, 885 F.3d 1123, 1128 (8th Cir. 2018). A hiring hall may be exclusive even where the employer can reject any applicant referred, or where the employer obtains personnel on its own when the union exhausts its referral list. *Id*. at 1129 (internal citations omitted). Furthermore, even if a collective bargaining agreement does not specify an exclusive job referral system, "the parties' practice alone can provide the required evidence to demonstrate [*de facto*] exclusivity." *Id.* at 1129-1130 (citing *N.L.R.B. v. Moving Picture & Projection Mach. Operators Union, Local No. 143*, 649 F.2d 610, 612 (8th Cir. 1981)).

Here, although the Complaint alleges that Local 805 is the "exclusive bargaining representative" for workers in the entertainment industry in the St. Louis, Missouri area, it does not allege that Local 805's Hiring Hall was exclusive. There are no facts alleged in the Complaint from which this Court can infer the existence of an exclusive job referral system either through a collective bargaining agreement between employers and Local 805 or a *de facto* exclusive hiring hall arrangement based on the conduct of employers and Local 805. For example, as Defendants correctly point out, the Complaint does not allege that the Hiring Hall was employers' only source of referrals, nor that employers refused to hire non-union members, nor that Plaintiffs could not have sought work directly from employers.

The absence of such facts from the Complaint is important because much of Plaintiffs' claims stem from job referrals through the hiring hall and the Eighth Circuit has held that "no duty of fair representation attaches to a union's operation of a nonexclusive hiring hall." *IATSE, Local Union No. 151*, 885 F.3d at 1128 (adopting the holdings of the National Labor Relations Board (NLRB) that "[w]here a union has a nonexclusive referral arrangement with an employer, the union has no exclusive status relating to potential employees. Individuals can obtain employment either

through the union's hiring hall or through direct application to the employer") (citing *Teamsters Local 460 (Superior Asphalt)*, 300 N.L.R.B. at 441. Plaintiffs counter that, standing alone, the assertion that Local 805 is the "exclusive bargaining representative" for workers in the entertainment industry in the St. Louis, Missouri area is sufficient to "trigger[] the duty of fair representation" in the hiring hall context. (ECF No. 35 at 3). In support of this argument, they cite *Diaz v. Int'l Longshore & Warehouse Union, Loc. 13*, 474 F.3d 1202, 1207 (9th Cir. 2007).

The Court is skeptical of this argument for at least two reasons. First, Plaintiffs' reliance on *Diaz* is misplaced because *Diaz* does not address the specific issue raised by the pleading deficiencies discussed above—namely, does the duty of fair representation attach when an exclusive bargaining representative operates a non-exclusive hiring hall? In holding that the duty of fair representation had been triggered, the court in *Diaz* relied on the Supreme Court's holding in *Breininger* that "a union's operation of an *exclusive* hiring hall is subject to the duty of fair representation." *Diaz*, 474 F.3d at 1207 (citing *Breininger*, 493 U.S. at 87 n.11) (emphasis added). The *Diaz* court (and Plaintiffs) also relied on *Lucas v. N.L.R.B.*, 333 F.3d 927 (9th Cir. 2003), a case whose findings specifically pertained to the operation of an *exclusive* hiring hall. *See id.* at 935 ("[A] heightened duty of fair dealing applies to a union's operation of an exclusive hiring hall."); *see also Diaz*, 474 F.3d at 1207 ("Relying on *Breininger,* we held that in operating a hiring hall a union takes on added responsibility because it wields a special power over workers' livelihood. Thus, when the union operates a hiring hall, it owes a duty of fair representation to all applicants using the hiring hall.") (citing *Lucas*, 333 F.3d at 932, 934) (internal citations omitted). In sum, *Diaz* does not support Plaintiffs' argument because it is silent as to the exclusivity issue presently before the Court and, based on this Court's own research, it is not at all clear from Eighth Circuit precedent that, in the hiring hall context, the duty of fair representation would attach to the operation of a non-exclusive hiring hall by a designated exclusive bargaining representative.

– 9 –

Second, even if, as Plaintiff's contend, the allegation that Local 805 is the "exclusive bargaining representative" for workers in the entertainment industry in the St. Louis, Missouri area is sufficient to "trigger[] the duty of fair representation" in the hiring hall context, that allegation is itself a legal conclusion that this Court need not accept as true absent sufficient facts demonstrating that Local 805 is, in fact, the "exclusive bargaining representative" as alleged. *Iqbal*, 556 U.S. at 678.

Defendants point out, and the Court's research suggests, that a union's designation as the "exclusive bargaining representative" is a legal status attained through (a) certification by the NLRB, (b) voluntary recognition by an employer through a collective bargaining agreement, or (c) possession of cards signed by a majority of the employees authorizing the union to represent them for collective bargaining purposes. *See 1621 Route 22 W. Operating Co., LLC v. Nat'l Lab. Rels. Bd.*, 825 F.3d 128, 135 (3d Cir. 2016) ("Although a Board-supervised election is the most commonly traveled route for a union to obtain recognition as the exclusive bargaining representative of an unorganized group of employees…[a] union that collects authorization cards for a majority of employees can [ ] claim to be the exclusive bargaining representative for employee.") (citation modified) (citing *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 596–97, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969)); Fed. Lab. Law: NLRB Prac. § 8:2 (explaining that "[t]here are two basic ways in which a union may *obtain recognition* as the exclusive bargaining representative of a group of employees" and discussing petitions to the NLRB and authorization cards by a majority of employees) (emphasis added); *Raymond Interior Sys., Inc. v. N.L.R.B.*, 812 F.3d 168, 176 (D.C. Cir. 2016) ("A union can achieve the status of a majority collective bargaining representative through either Board certification or voluntary recognition by the employer...") (citation modified). In other words, "exclusive bargaining representative" is formal recognition by some source—be it a government board, a collective bargaining agreement, or the vote of a majority of relevant

employees—that triggers statutory obligations such as the duty of fair representation. *See McCormick*, 340 F.3d at 646. Without additional factual assertions from which this Court can plausibly infer that, through one of the methods outlined above, Local 805 was in fact the "exclusive bargaining representative" for the region's entertainment industry workers, Plaintiffs' assertion is a bare legal conclusion that this Court is not bound to accept as true. *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) ("Courts are not bound to accept as true a legal conclusion couched as factual allegations, and factual allegations must be enough to raise a right to relief above the speculative level.") (quoting *Twombly*, 550 U.S. at 555).

In sum, the Court finds that the Complaint fails to adequately allege that Local 805 *is* Plaintiffs' exclusive bargaining representative and fails to adequately allege that Local 805 operated an exclusive hiring hall. As such, the Complaint leaves the Court with too little to find that Plaintiffs have adequately pled that Local 805 owes them a duty of fair representation. Consequently, the Court finds that Plaintiffs fail to state a claim for a breach of duty of fair representation against Local 805.

Due to the above findings, the Court need not decide Defendants' remaining arguments, particularly in light of Plaintiffs' request for leave to amend should the Court find deficiencies in the pleadings.[4]

---

[4] Although the Court declines to make findings for the remaining issues raised by Defendants, it will note relevant observations that may guide the parties should Plaintiff pursue an amended complaint. First, the Court notes that, despite Plaintiffs' assertion in their response that the Complaint states a hybrid Section 301/duty of fair representation claim, "[a] hybrid § 301 action is one in which an employee alleges that the *employer* breached a collective bargaining agreement, and that the union breached its duty of fair representation by mishandling the ensuing grievance-and-arbitration proceedings, whether the employee sues the employer, the union, or both." *Lewis v. Challenge Mfg. Co. LLC*, 2022 WL 17338433, at *3 (E.D. Mo. Nov. 29, 2022) (emphasis added); *see also Jones v. United Parcel Serv., Inc.*, 461 F.3d 982, 994 (8th Cir. 2006) ("A party seeking to recover on a 'hybrid' § 301 claim against the employer must prove both that the employer violated the collective bargaining agreement and that the union breached its duty of fair representation…").The Complaint does not currently make any allegations pertaining to specific

– 11 –

As noted above, Plaintiffs moved, in the alternative, for leave to amend their Complaint. Defendants have not opposed this request. The Court should freely give leave to amend a pleading when justice so requires. Fed. R. Civ. P. 15(a)(2). The determination as to whether to grant leave to amend is entrusted to the sound discretion of the trial court. *Niagara of Wis. Paper Corp. v. Paper Indus. Union Mgmt. Pens. Fund*, 800 F.2d 742, 749 (8th Cir. 1986). Here, the Court will permit Plaintiffs to file an amended complaint.

IV.    CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that the Defendants' Motion to Dismiss (Doc. 17) is **GRANTED** and the Complaint (Doc. 1) is **DISMISSED, without prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff may file an amended complaint addressing the deficiencies addressed in this Order no later than **August 20, 2026.** If no amended complaint is filed by **August 20, 2026**, this Court will enter a judgment dismissing the complaint in the manner and for the reasons described in this Memorandum and Order.

---

employers.

Second, case law from other circuits suggests that "a matter that only involves the relationship between the union and its members and does not also involve the employer is viewed as an internal union matter that does not give rise to a duty of fair representation." *Greenberg v. Int'l Union of Operating Eng'rs, Loc. 14-14B*, 588 F. App'x 5, 7 (2d Cir. 2014) (citation modified); *see also Richards v. Ohio Civ. Serv. Emps. Ass'n.*, 205 F. App'x 347, 354 (6th Cir. 2006) (distinguishing "the LMRDA, which specifically regulates union/member relationships" from "the prior-enacted LMRA, whose emphasis is the union's relationship with its employer, not its individual members."). *But see Loc. 37, Sheet Metal Workers' Int'l Ass'n v. Sheet Metal Workers' Int'l Ass'n, AFL-CIO*, 655 F.2d 892, 895 (8th Cir. 1981) (finding that, in an action between a local union and an international union, dispute involving interpretation of union constitution could fall under Section 301 of LMRA).

Finally, the Court cautions that "Section 301(b) [of the LMRA] by its terms prohibits a money judgment entered against a union from being enforced against individual union members." *Complete Auto Transit, Inc. v. Reis*, 451 U.S. 401, 407 (1981).

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of July, 2026.